**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
ERICA LINDSAY LEE,                                    Case No.: 1:21-cv-07934-LGS

                Plaintiff,

      v.

ANDREW YANG and FRIENDS OF ANDREW
YANG,

                Defendants.
-----------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

**White & Hilferty**
Samantha E. Hudler, Esq.
Michael P. Hilferty, Esq.
*Attorneys for Plaintiff*
757 Third Avenue, 20th Floor
New York, New York 10017

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF RELEVANT FACTS ................................................................. 2

LEGAL ARGUMENT ............................................................................................. 9

     I.      Standard of Review ................................................................... 9

     II.     Plaintiff has Standing to Assert her Discrimination and
            Retaliation Causes of Action Given that she was Considered an
            Employee of Defendants Under the Applicable Statutes ....................... 9

            A.  Plaintiff has Standing to Assert her Title VII Claims Given
                That She Was Employed by Defendants ........................................... 10

            B.  Plaintiff Has Standing to Assert NYSHRL and NYCHRL Claims
                Given That She Was Employed by Defendants ................................ 12

     III.    Plaintiff Pled Plausible Claims Against Defendant Yang Under
            NYSHRL and NYCHRL ....................................................................... 12

            A.  Title VII Claims against Defendant Yang ......................................... 12

            B.  Defendant Yang is Individually Liable under NYSHRL and
                NYCHRL .............................................................................................. 12

     IV.    Plaintiff Pled Plausible Claims of Sex-Based Discrimination ............ 15

     V.     Plaintiff Pled Plausible Claims of Retaliation ..................................... 16

            A.  Plaintiff Pled a Plausible Retaliatory Failure to Hire Claim ............. 18

            B.  Plaintiff Suffered Adverse Employment Action When Defendants
                Publicly Criticized and Doxed Her on Social Media ........................ 19

     VI.    Plaintiff's Defamation Claim ................................................................ 20

     VII.   Leave to Replead .................................................................................... 20

CONCLUSION ...................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Case(s)**                                                                                    **Page(s)**

*Apotex Inc. v. Acorda Therapeutics, Inc.*,
LLC, 823 F.3d 51 (2d Cir. 2016) ................................................................................9

*Areu v. Fox News Network*, *LLC*,
2021 WL 4124226 (S.D.N.Y. Sept. 9, 2021) ...................................................10,11,12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................................................................9

*Bell Atlantic Corp v. Twombly*,
550 U.S. 544 (2007)...................................................................................................9

*Brown v. City of New York*,
2013 WL 3789091 (S.D.N.Y. July 19, 2013) ...................................................12,14,15

*Brown v. Coach Stores, Inc.*,
163 F.3d 706 (2d Cir. 1998)........................................................................................18

*Brown v. Daikin Am. Inc.*,
757 F.3d 219 (2d Cir. 2014)........................................................................................10

*Cmty. for Creative Non-Violence v. Reid*,
490 U.S. 730 (1989) ...................................................................................................10

*Daniels v. City of New York*,
No. 17 CIV. 9960 (LGS), 2019 WL 251511 (S.D.N.Y. Jan. 17, 2019) ........................9

*de Souza v. Planned Parenthood Fed'n of Am., Inc.*,
No. 21 CIV. 5553 (LGS), 2022 WL 2047580, at *1 (S.D.N.Y. June 7, 2022).......................17,18

*Doe v. State of New York*,
89 A.D.3d 787 (2011) ...................................................................................................12,15

*Duplan v. City of New York*,
888 F.3d 612 (2d Cir. 2018)........................................................................................16,17,18

*Feingold v. New York*,
366 F.3d 138 (2d Cir. 2004)........................................................................................13

*Gorman v. Covidien, LLC*,
146 F. Supp. 3d 509 (S.D.N.Y. 2015)........................................................................12,13,14,15

*Gulino v. New York State Educ. Dep't,*
460 F.3d 361 (2d Cir. 2006)...........................................................................9

*Harris v. Mills*,
572 F.3d 66 (2d Cir. 2009) ...........................................................................11

*Hughes v. Twenty-First Century Fox, Inc.,*
304 F. Supp. 3d 429 (S.D.N.Y. 2018) ...................................................10,11,19

*Littlejohn v. City of New York*,
195 F.3d 297 (2d Cir. 1997) ...........................................................................9

*Mahmud v. Kaufman*,
496 F. supp. 2d 266 (S.D.N.Y. 2007) ..............................................................9

*Menaker v. Hofstra Univ.*,
935 F.3d 20 (2d Cir. 2019) ...........................................................................15

*Musiello v. CBS Corp.*,
518 F. Supp. 3d 782 (S.D.N.Y. 2021) ...............................................................9

*Nechis v. Oxford Health Plans, Inc.*,
421 F.3d 96 (2d Cir. 2005)............................................................................20

*Noni v. Cty of Chautauqua*,
511 F. Supp. 2d 255 (W.D.N.Y. 2007) ...........................................................19

*O'Connor v. Davis*,
126 F.3d 112 (2d Cir. 1997) .........................................................................10

*Shultz v. Congregation Shearith Israel*,
867 F.3d 298 (2d Cir. 2017)...........................................................................17

*Sowemimo v. D.A.O.R. Sec., Inc.*,
43 F. Supp. 2d 477 (S.D.N.Y. 1999)................................................................14

*Tex. Dep't of Cmty. Affairs v. Burdine*,
450 U.S. 248, 253 (1981) ..............................................................................18

*Townsend v. Benjamin Enterprises, Inc.,*
679 F.3d 41 (2d Cir. 2012) ...........................................................................13

*United States v. City of N.Y.*,
359 F.3d 83 (2d Cir. 2004) ...........................................................................10

*Vega v. Hempstead Union Free Sch. Dist.,*
801 F.3d 72 (2d Cir. 2015) ................................................................................16,17

*Veprinsky v. Fluor Daniel, Inc.,*
87 F.3d 881 (7th Cir. 1996) ...................................................................................19

*Wang v. Phoenix Satellite Television US, Inc.,*
976 F. Supp. 2d 527 (S.D.N.Y. 2013) ...............................................................18,19

*Zakrzewska v. New School,*
14 N.Y.3d 469 (2010) ............................................................................................13

## **Statutes**

42 U.S.C. § 2000 ............................................................................................... 10

Fed. R. Civ. P. 12(b)(6) ................................................................................ 1,9,11,15

N.Y.C. Admin. Code § 8-107 .......................................................................... 13,17

N.Y. Exec. Law § 296 ....................................................................................... 12,13

## PRELIMINARY STATEMENT

Plaintiff Erica Lindsay Lee ("Plaintiff") respectfully submits this Memorandum of Law in Opposition to Friends of Andrew Yang, Inc. ("Defendant FOAY") and Andrew Yang's ("Defendant Yang") (collectively "Defendants") Motion to Dismiss Plaintiff's Amended Complaint ("Motion") pursuant to Fed. R. Civ. P. 12(b)(6). Defendants assert in their Motion that Plaintiff: (1) failed to sufficiently plead her employment discrimination and retaliation claims in the Amended Complaint because she was purportedly a "volunteer" and not an employee of Defendants; (2) improperly named Defendant Yang as an individual Defendant; and (3) asserted time-barred defamation claims against Defendant. As outlined herein, Plaintiff sufficiently pled employment discrimination and retaliation claims under the applicable statutes and properly named Defendant Yang as an individual Defendant under NYSHRL and NYCHRL.

Defendants' Motion reveals the manner in which Defendants have attempted to strategically manipulate the legal system by classifying employees as "volunteers" in an attempt to avoid employer liability,[1] as well as its blatant disregard and failure to address the ongoing misogyny, gender discrimination, and retaliation permeating throughout its workplace. Notably, at no time did Defendants advise Plaintiff that they could not address her discrimination and retaliation complaints because she was "just a volunteer." Rather, for approximately three months, Defendants led Plaintiff to believe that her complaints of discrimination, harassment, and retaliation would be handled and involved Human Resources. Defendants also terminated

---

[1] Recently, three third-party entities have merged into a new self-proclaimed centrist party "Forward Party" offering an alternative to the traditional two-party political system. The three parties consist of Renew America Movement, which was created in 2021 by former Republican officials, the Forward Party created by Andrew Yang, and the Serve America Movement, combined of Democrats, Republicans, and independents. Tellingly, the Forward Party is hiring employees under the titles of "state lead" in advertised job postings to complete the duties of the employees formerly known as "volunteers" during the time-period of Plaintiff's employment. The Forward Party fails to differentiate between state leads and volunteers. The Forward Party: 3 political groups merge to create new party, chaired by Yang, Whitman (msn.com).

Plaintiff's employment and denied Complainant employment opportunities in furtherance of their discriminatory and retaliatory animus against her.

As outlined herein, this Court must deny Defendants' Motion to Dismiss Plaintiff's Amended Complaint.

## STATEMENT OF RELEVANT FACTS

On February 1, 2018, Defendant FOAY announced Defendant Andrew Yang's presidential campaign. (*See* Dkt No. 52, Am. Comp., at ¶ 12). Defendant Yang was the head of Defendant FOAY. (*Id.*, at ¶ 13). In May 2019, Plaintiff joined the Andrew Yang Basecamp Facebook group ("Basecamp") and responded to Defendant FOAY Basecamp Moderator Fred Ramey's ("Ramey") gender-based discriminatory comments posted on the Facebook page. (*Id.*, at ¶ 17).  On May 3, 2019, Plaintiff attended the Andrew Yang for President rally at Seattle Gasworks Park and spoke with Defendant FOAY's National Campaign Finance Director Carly Reilly ("Reilly") regarding applying for a position of employment with FOAY. (*Id.*, at ¶ 18).

On or about May 4, 2019, Plaintiff applied for a field organization position with Defendants by submitting a cover letter via Defendants' website. (*Id.*, at ¶ 21). In June 2019, Plaintiff engaged in protected activity by opposing discriminatory comments about women in Defendants' Basecamp. (*Id.*, at ¶ 22). On June 5, 2019, Ramey messaged Plaintiff inquiring whether she reported a comment in Basecamp. (*Id.*, at ¶ 23).  Plaintiff confirmed that she did report an offensive Basecamp comment previously and noted that there was "an obvious difference when a woman comments that the men pile on event when not related to them personally and men who say the same are left alone." (*Id.*) In response, Ramey stated, "That is not okay…regardless of viewpoints" and "All politics is man heavy…[w]hat you are doing is counterproductive to your own reasoning…[r]econsider." (*Id.*). Subsequently, Plaintiff asked Ramey about the demographic of

the moderators for the Basecamp community because there was a significant amount of sexism and misogyny displayed within the group. (*Id.*). Notably, Ramey was the subject of multiple complaints submitted to Defendants due to his use of the words, "bitch" and "cunt," as well as his racist commentary. (*Id.*).

On June 8, 2019, Ramey sent Plaintiff a direct message via Facebook stating, "Would you care to help mod for basecamp…I presented your case to the group...[w]e need more people..." (*Id.*, at ¶ 24). Social Media Coordinator Kayle Jellesma ("Jellesma") then emailed Plaintiff onboarding information to become a Basecamp Moderator for Defendants, which Plaintiff completed and submitted on June 9, 2019 (*Id.*, at ¶¶ 24, 25). On June 25, 2019, Defendants retaliated against Plaintiff by denying her the opportunity to be a Moderator for Basecamp. (*Id.*, at ¶ 27). Specifically, Jellesma wrote to Plaintiff, in relevant part, "…some of the comments you've made on the campaign management and at the moment we are afraid that you may not be a good fit…[o]ur campaign is unorthodox, but that's how we've gotten this far. I hope you understand our position." (*Id.*). Jellesma explained to Plaintiff that she was referring to "[t]he comments regarding the campaign being composed of millennials and your discussion with Fred [Ramey] about the female composition of the group...[w]e are working on expanding our reach to female voters, it just so happens that the platforms where Andrew started gaining popularity were male dominated platforms." (*Id.*).

On June 28, 2019, Plaintiff engaged in further protected activity by responding to Jellesma's message stating, in relevant part, "…I am very sorry for what I posted that made you unsure of my ability to moderate... it was regarding frustration with what I felt was lack of moderation of the sexism in the group and lack of women, period..." and "[t]he comments you reference were posted before I was offered the opportunity to moderate though, before you sent

me the information to review….” (*Id.*). On June 29, 2019, Jellesma responded to Plaintiff’s message stating, in relevant part, “I am not saying that your help is not needed, I am saying that knowing the changes you want to make to Andrew’s campaign, you will quickly become frustrated with the limitations of the mod position.” (*Id.*, at ¶ 29).

On July 3 and 6, 2019, YGRO Andrea Duncan (“Duncan”) contacted Plaintiff to schedule an interview with her for a YGRO position. (*Id.,* at ¶ 30). On July 9, 2019, Defendants officially hired Plaintiff as YGRO <u>and explicitly represented that Plaintiff would be compensated for her role as YGRO</u>. (*Id.,* at ¶ 31). On July 11, 2019, Looney posted a recruitment announcement in the Yang 2020 Slack Channel seeking applications for the YGRO position. (*Id.*, at ¶ 32). On July 12, 2019, after Plaintiff echoed concerns regarding problematic language in connection with immigration on the Yang 2020 Campaign website, Esther Baldwin (“Baldwin”), who was the Volunteer Administrator for the “Women for Yang” Facebook Group, falsely accused Plaintiff of “sharing propaganda.” (*Id.*, at ¶ 33). On July 13, 2019, Plaintiff contacted Anaami P., who was the Volunteer Administrator of the Women for Yang Facebook group, to discuss the incident that occurred with Baldwin on July 12, 2019. (*Id.*, at ¶ 34).

On August 21, 2019, Plaintiff and Thrapp had a telephone conversation, during which they discussed ways to improve Basecamp moderation against sexism and misogyny and about joining the @YangGangHub. (*Id.*, at ¶ 36). During said call, Plaintiff engaged in protected activity by opposing Defendants’ gender-based discriminatory practices and lodging complaints about Defendants’ conduct. (*Id.*) On August 22, 2019, Thrapp retaliated against Plaintiff by falsely accusing her of “publicly raising an outcry” in the Women for Yang Facebook Group. (*Id.*, at ¶ 35). Upon information and belief, Thrapp observed the online confrontation between Baldwin and Heidi Day, who expressed criticism on Twitter regarding the sexism and misogyny within

Defendants' Basecamp, and falsely assumed that Plaintiff was responsible for the situation due to her previous opposition of Defendants' gender-based discrimination. (*Id.*). On the same date, Plaintiff applied for an Executive Assistant position for which she was qualified that was advertised on Defendants' website. (*Id.*, at ¶ 38).  However, Defendants failed to interview and hire Plaintiff for the Executive Assistant position despite her qualifications due to its retaliatory animus against her. (*Id.*).

On August 24, 2019, Thrapp sent a message to Plaintiff stating, in relevant part, "Your issue [gender discrimination complaints] is being looked at by the campaign and I personally don't care about it anymore." (*Id.*, at ¶ 39). Plaintiff then stated to Looney, "This \*situation\* has been a source of stress and anxiety for the past three days..." to which Looney responded, in relevant part, "I'm confused as to what the issue is... (*Id.*). On August 27, 2019, Plaintiff responded to Looney stating, "…one time back in June, I pointed out the sexism and lack of women in the Basecamp group and since then, anytime…I say [something] on the topic, they take the info back into the group and talk about me for hours." (*Id.*, at ¶ 40).

Between August 27, 2019, and September 25, 2019, Plaintiff did not receive any further communications from Looney. (*Id.*, at ¶ 41). On September 25, 2019, Plaintiff contacted Looney requesting that he escalate her harassment complaints to Defendants' Human Resources Department and subsequently contacted Defendant FOAY Senior Political Advisor Steve Marchand ("Marchand") stating, "I've been reporting retaliation in the form of harassment for reporting sexism and misogyny in the Basecamp group and not getting anywhere…[i]s there someone I can talk to…I've been discussing this with Shaun for months." (*Id.*, at ¶ 42). Significantly, Marchand never responded to Plaintiff. (*Id.*). On September 25, 2019, Looney emailed Plaintiff and FOAY employee Christine Nbemeneh ("Nbemeneh") acknowledging the

"amazing work" Plaintiff "has been doing for a while now." (*Id.*, at ¶ 43). Shortly thereafter, Thrapp stated to others in a Discord Group, "She's [Plaintiff] going to go into histrionics when she sees what happens next…[s]he's out…" (*Id.*).

On September 26, 2019, Plaintiff emailed Nbemeneh a screenshot of Thrapp's message, as well as a copy of his message to the @YangGangHub Twitter group chat stating, "Erica is being handled by the campaign." (*Id.*, at ¶ 44). In response, Nbemeneh apologized for Plaintiff's experience and offered to speak with her the following day; however, Nbemeneh never contacted Plaintiff. (*Id.*). Later that day, Thrapp disclosed to prominent members of the Yang Gang that "the campaign is fully involved in this and they have been for months," referring to Plaintiff. (*Id.*). Thereafter, Plaintiff sent a fourth message to Marchand requesting help and stating that she was being harassed by Defendants' employees in connection with Basecamp; however, Marchand failed to respond to Plaintiff. (*Id.*). On September 27, 2019, Defendant FOAY member Sean Copello acknowledged the harassment to which Plaintiff was subjected by Defendants by posting a Tweet via his Twitter account stating, "Why is @HumanistHulk [Thrapp] harassing OG #YangGang @AmericaLee [Plaintiff]?" (*Id.*, at ¶ 45).

On September 28, 2019, Defendants retaliated against Plaintiff by deactivating her Slack account and publicly disclosing on Twitter that Plaintiff "has been removed as Washington's Yang Gang Regional Organizer." (*Id.*). Thereafter, conversations in the Defendant FOAY Discord and Twitter contained a "blacklist" with Plaintiff's name on it. (*Id.*). Plaintiff then called Defendant FOAY employee Katie Dolan ("Dolan") regarding Defendants' public termination of her employment, the ongoing harassment, her multiple complaints regarding the same, and requested that she be reinstated as YGRO. (*Id.*). Plaintiff then sent a text message to Reilly regarding the same; however, Reilly failed to respond. (*Id.*). On September 29, 2019, Defendants further

retaliated against Plaintiff when Co-Founder of the Yang Gang Report David Barnes ("Barnes") doxed Plaintiff by publishing a private conversation between them, which included Plaintiff's telephone number, email, and daily work routine, on multiple social media platforms titling the posts "Erica Lindsay yikes." (*Id.*, at ¶ 47). Subsequently, Defendant FOAY employees and volunteers signed a letter detailing the harassment, discrimination and retaliation to which Defendants subjected Plaintiff. (*Id.*).

A few days later, Defendant FOAY employee Rebecca Nagy ("Nagy") further retaliated against Plaintiff by revealing confidential information Plaintiff provided to Defendants' Human Resources Department. (*Id.*, at ¶ 48). Specifically, in a Facebook message exchange with New Jersey YGRO Leah Piotroski ("Piotroski"), Nagy wrote, "[T]here is ABSOLUTELY misogyny in the Yang Gang…the big frustration with Erica was that essentially when she brought it to us, her solution was that we fuck off and she take over everything… I know they were planning this for awhile, because…I got a message from Fred where he wanted to 'offer advice' on how to 'Deal' with Erica…and his advice was…and I have screenshots of this, '**Call her a cunt**.'" (*Id.*).

On October 1, 2019, Plaintiff informed Defendant Yang about the relentless discrimination and retaliation to which she was subjected during her employment with Defendants. (*Id.*, at ¶ 49). (*Id.*). In response, Defendant Yang told Plaintiff that he would have someone contact her and that she "has his phone number now for use;" however, Defendant Yang never answered or returned Plaintiff's calls. (*Id.*). On October 2, 2019, Ramey and Actress Alyssa Milano ("Milano") delivered Defendant Yang a copy of the above-mentioned letter. (*Id.*, at ¶ 50). In response, Defendant Yang falsely represented to Milano that the situation was "resolved." (*Id.*). On October 4, 2019, Plaintiff messaged Defendant Yang to which he responded, "Thanks Erica—someone will reach out later today…[a]ppreciate your patience, resilience and understanding." (*Id.*, at ¶ 51).

Subsequently, Plaintiff spoke with Defendant FOAY employee Matt Shinners ("Shinners") regarding her discrimination and retaliation complaints to which Shinners stated, "I will be taking this very seriously" and asked Plaintiff to provide evidence, which she subsequently provided. (*Id.*).

On October 5, 2019, Defendants further retaliated against Plaintiff when Barnes again publicly posted the direct message conversation between him and Plaintiff, which contained Plaintiff's personal information, and accused Plaintiff of being a "known political operative that worked for Hillary Clinton" on multiple social media platforms. (*Id.*, at ¶ 51). Significantly, despite Plaintiff's complaints regarding the severe harassment, discrimination, retaliation, and defamation to which she was subjected to by Barnes, Defendants officially hired him. (*Id.*, at ¶ 53).   On October 6, 2019, Plaintiff emailed Shinners an 80-page report detailing the harassment, discrimination, and retaliation to which Defendants subjected her. (*Id.*, at ¶ 54).   Plaintiff subsequently learned from other employees that Shinners purposefully ignored Plaintiff's complaints and that Defendants instructed all employees "not to engage with [Plaintiff]" regarding complaints."

On October 18, 2019, Plaintiff spoke with Defendant FOAY Director of Distributed Organizing Drew Corbitt ("Corbitt") regarding the ongoing discrimination, harassment, and retaliation she was experiencing and provided him with evidence. (*Id.*, at ¶ 55). On October 21, 2019, Plaintiff sent a text message to Corbitt evidencing the harassment to which she was subjected by Defendants. (*Id.*, at ¶ 57). On December 14, 2019, @TheRealBCereus, who is a prominent supporter of Defendant Yang, published a smear video, which included Plaintiff's allegations of harassment, discrimination, and retaliation against Defendants. (*Id.*, at ¶ 58). Following the unlawful termination of Plaintiff's employment, Defendants hired a significant number of male

volunteers for permanent roles within Defendant FOAY while failing to hire Plaintiff and/or denying her a permanent position with Defendants. (*Id.*, at ¶ 59).

## LEGAL ARGUMENT

### I.    STANDARD OF REVIEW

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all factual allegations as true and draw all inferences in favor of the plaintiff. *Apotex Inc. v. Acorda Therapeutics, Inc.,* 823 F.3d 51, 59 (2d Cir. 2016) (citing *Littlejohn v. City of New York,* 795 F.3d 297, 306 (2d Cir. 2015)). To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the plaintiff must allege sufficient facts, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556). In addition to alleging facts that are consistent with liability, the complaint must "nudge[] claims across the line from conceivable to plausible." *Daniels v. City of New York,* No. 17 CIV. 9960 (LGS), 2019 WL 251511, at *2 (S.D.N.Y. Jan. 17, 2019) (Shofield, J.) (quoting *Twombly,* 550 U.S. at 570).

### II.    PLAINTIFF HAS STANDING TO ASSERT HER DISCRIMINATION AND RETALIATION CAUSES OF ACTION GIVEN THAT SHE WAS CONSIDERED AN EMPLOYEE OF DEFENDANTS UNDER THE APPLICABLE STATUTES

To bring a claim of discrimination and retaliation under Title VII, NYSHRL, and NYCHRL, the plaintiff must establish that an employee/employer relationship existed between Plaintiff and defendants. *Gulino v. New York State Educ. Dep't,* 460 F.3d 361, 370 (2d Cir. 2006); *Mahmud v. Kaufman,* 496 F. supp. 2d 266, 274-75 (S.D.N.Y. 2007); *Musiello v. CBS Corp.,* 518 F. Supp. 3d 782, 789 (S.D.N.Y. 2021). The employment relationship that is required

to sustain NYSHRL and NYCHRL claims is analogous to the requirements to sustain a Title VII claim. *Brown v. Daikin Am. Inc.,* 757 F.3d 219, 226 (2d Cir. 2014).

    A.   <u>Plaintiff Has Standing to Assert Title VII Claims Given That She Was Employed by Defendants</u>

Title VII defines "employee" as "an individual employed by an employer." *Areu v. Fox News Network,* LLC, 2021 WL 4124226, at *8-10 (S.D.N.Y. Sept. 9, 2021) (citing *O'Connor v. Davis*, 126 F.3d 112, 115 (2d Cir. 1997)). *See also* 42 U.S.C. § 2000e(f). The Second Circuit has established a two-part test to determine an individual's employment status in situations where a clear employer-employee relationship cannot be ascertained. *Areu*, 2021 WL 4124226, at *8-10. First, a plaintiff must show that she was hired by the employer by establishing that "she received remuneration in some form for her work." *Id.* (citing *United States v. City of N.Y.*, 359 F.3d 83, 91-92 (2d Cir. 2004)). The remuneration required need not be a salary; however, it must convey a "substantial benefit" to the employee. *Id.*

Second, a court must determine whether the hired person is an employee based upon the following factors:

> (1) the hiring party's right to control the manner and means by which the product is accomplished; (2) the skill required; (3) the source of the instrumentalities and tools; (4) the location of the work; (5) the duration of the relationship between the parties; (6) whether the hiring party has the right to assign additional projects to the hired party; (7) the extent of the hired party's discretion over when and how long to work; (8) the method of payment; (9) the hired party's role in hiring and paying assistants; (10) whether the work is part of the regular business of the hiring party; (11) whether the hiring party is in business; (12) the provision of employee benefits; and (13) the tax treatment of the hired party.

*Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 442 (S.D.N.Y. 2018) (citing *Cmty. for Creative Non-Violence v. Reid,* 490 U.S. 730, 751-52 (1989). In the employment discrimination context, "courts place the greatest emphasis on the extent to which the hiring party controls the manner and means by which the worker completes his or her assigned tasks."

*Hughes,* 304 F. Supp. 3d at 443 (citing *City of N.Y.*, 359 F.3d at 91-92).

As a preliminary matter, in their Memorandum of Law in Support, Defendants repeatedly point out contradictions between Plaintiff's initial Complaint and the Amended Complaint. As this Court is aware, Plaintiff filed her initial Complaint as a pro se Plaintiff. When deciding a motion to dismiss for failure to state a claim, a court must construe a pro se complaint liberally. *Harris v. Mills*, 572 F.3d 66 (2d Cir. 2009) (citing Fed. R. Civ. P. 12(b)(6)). Therefore, Defendants' arguments concerning the differences between Plaintiff's original complaint and the Amended Complaint are not dispositive.

Defendants further argue, "Plaintiff's reliance on Areu in her letter opposing leave to file this Motion is misplaced" and that "*Areu* supports a conclusion here that Plaintiff did not have an employer relationship with Defendants." To the contrary, the instant matter can be distinguished from *Areu* given that in both the original Complaint and Amended Complaint, Plaintiff explicitly alleged that Defendants represented at the time of her hire that she would be compensated for her role as YGRO. (Dkt. Nos. 11, at pp. 5, 10; 52, at ¶ 31). *See Areu*, 2021 WL 4124226, at *9 (explaining that the plaintiff failed to plead facts about her renumeration in the complaint and therefore, failed to plausibly allege that she was ever an employee of defendant). As such, the remuneration Defendants promised Plaintiff was a paid salary and therefore, Plaintiff satisfies the first part of the test. *See Areu*, 2021 WL 4124226, at *8-10.

With respect to the second part of the test, while Plaintiff can satisfy most of the 13 factors, for purposes of brevity, Plaintiff can establish that Defendants "control[led] the manner and means by which [Plaintiff] complete[ed] her assigned tasks," which is the most important factor. *See Hughes,* 304 F. Supp. 3d at 443. Specifically, in the Amended Complaint, Plaintiff alleged that Defendants controlled what Plaintiff posted on social media and required her to

meet specific goals, login to a specific platform, contact volunteers regarding applications, consolidate "Yang Gangs" within her state, and track volunteers retained. (*See generally,* Am. Cpt.). Defendants also provided Plaintiff with a specific FOAY email account to use when communicating as YGRO. (*Id.*) Throughout her employment, Looney regularly checked in with Plaintiff via various communication platforms regarding tasks for which she was responsible and required Plaintiff to attend weekly YGRO meetings during which they would discuss Plaintiff's assignments. (*Id.*).

As such, Plaintiff can establish that she was an employee of Defendants and therefore, has standing to assert claims under Title VII.

**B.** Plaintiff Has Standing to Assert NYSHRL and NYCHRL Claims Given That She Was Employed by Defendants

The standards for recovery under NYSHRL and NYCHRL are the same as the federal standards under Title VII. *Areu*, 2021 WL 4124226, at *10. Accordingly, for the reasons outlined above, Plaintiff was an employee of Defendants under NYSHRL and NYCHRL.

## III. PLAINTIFF PLED PLAUSIBLE CLAIMS AGAINST DEFENDANT YANG UNDER NYSHRL AND NYCHRL

**A.** Title VII Claims against Defendant Yang

Plaintiff consents to the dismissal of her Title VII claim against Defendant Yang.

**B.** Defendant Yang is Individually Liable under NYSHRL and NYCHRL

Under NYSHRL, "[l]iability for an employee's discriminatory conduct may only be imputed to an employer under the NYSHRL if the employer 'became a party to it by encouraging, condoning, or approving it." *Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 521 (S.D.N.Y. 2015) (citing *Brown* v. *City of New York*, 2013 WL 3789091, at *18 (S.D.N.Y. July 19, 2013)) *see also Doe v. State of New York,* 89 A.D.3d 787, 933 ("Under [Section 296], [a]n employer cannot be held liable for an employee's discriminatory act unless the employer became a party to it by

encouraging, condoning, or approving it…[i]t is only after an employer knows or should have known of improper discriminatory conduct that it can undertake or fail to undertake action which may be construed as condoning the improper conduct.") (internal quotations omitted).

Under NYSHRL, it is unlawful "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so." *Feingold v. New York,* 366 F.3d 138, 157-58 (2d Cir. 2004) (citing N.Y. Exec. Law § 296(6)). Therefore, NYSHRL allows for individual liability if the individual defendant "aided and abetted the unlawful discriminatory acts of others." *Gorman,* 146 F. Supp. 3d at 521-22. Furthermore, "[a]n individual may be considered an employer if he or she has an ownership interest in the relevant organization or the power to do more than carry out personnel decisions made by others." *Id.* (citing *Townsend v. Benjamin Enterprises, Inc.,* 679 F.3d 41, 57 (2d Cir. 2012)).

The NYCHRL "expressly creates direct liability for employment discrimination against an employee or agent of the employer in question." *Gorman,* 146 F. Supp. 3d at 529 (citing N.Y.C. Admin. Code § 8-107(1)(a). Under NYCHRL, an employee's conduct may be imputed to an employer in three circumstances where: (1) the offending employee was a manager or supervisor; (2) the employer had knowledge of the offending employee's discriminatory conduct and "acquiesced in it or failed to take immediate and appropriate corrective action;" and (3) the employer "should have known of the offending employee's discriminatory conduct yet failed to exercise reasonable diligence to prevent it." *Gorman,* 146 F. Supp. 3d at 529 (citing *Zakrzewska v. New School,* 14 N.Y.3d 469, 479 (2010)); N.Y.C. Admin. Code § 8-107(13). "The same standards of analysis used to evaluate aiding and abetting claims under the NYSHRL apply to such claims under the NYCHRL because the language of the two laws is virtually identical." *Feingold,* 366 F.3d at 158 (holding that the plaintiff proffered enough evidence to permit the conclusions

that two of the individual defendants took no action to remedy the hostile work environment to which Plaintiff was subjected and therefore, presented sufficient evidence to create a triable question as to whether they participated in the conduct giving rise to plaintiff's discrimination claims) (internal citations omitted).

Under both NYSHRL and NYCHRL, employees may be held personally liable "if they participate in the conduct giving rise to the discrimination claim." *Id.* (citing *Sowemimo v. D.A.O.R. Sec., Inc.,* 43 F. Supp. 2d 477, 490 (S.D.N.Y. 1999).

In the instant case, Plaintiff alleged that Defendant Yang is the "head of Defendant FOAY." (Am. Comp., at ¶ 13). Plaintiff further alleged that "Defendant Yang was personally involved in the adverse action taken against Plaintiff and that Defendant Yang acted in his official capacity when discriminating against Plaintiff. (*Id.* at ¶ 68). Clearly, Defendant Yang had an ownership interest in the "Friends of Andrew Yang" given that it was a campaign specifically created for him at the time he was a presidential candidate. (*Id.*). Therefore, Defendant Yang is considered an employer under NYSHRL given that he held an ownership interest in Defendant FOAY. *See Gorman,* 146 F. Supp. 3d at 521-22.

Furthermore, the discriminatory conduct of Defendants' employees may be imputed to Defendant Yang under NYSHRL given that he became a party to the discriminatory conduct by condoning such conduct. *See Gorman*, 146 F. Supp. 3d 509 at 521 (citing *Brown*, 2013 WL 3789091, at *18). Specifically, Defendant Yang became aware of the discrimination and retaliatory to which Plaintiff was subjected when she made multiple complaints to him about the ongoing situation. (Am. Comp., at ¶¶ 47, 49-51). After learning about the situation, Defendant Yang failed to ameliorate the ongoing discrimination and retaliation against Plaintiff when he failed to return her calls and/or discipline the offending employees. (*Id.*). As such, Defendant Yang condoned the

improper conduct despite Plaintiff's repeated pleas for help and is liable as an employer under NYSHRL. (*Id.*). *See Gorman*, 146 F. Supp. 3d 509 at 521 (citing *Brown*, 2013 WL 3789091, at *18. *See also Doe,* 89 A.D.3d 787 at 933.

For the same reasons, Defendant Yang is directly liable under NYCHRL for the discrimination to which Plaintiff was subjected during her employment with Defendants.

As such, this Court should deny Defendants' Motion to Dismiss the Amended Complaint given that Defendant Yang is individually liable under NYSHRL and NYCHRL.

## IV.   PLAINTIFF PLED PLAUSIBLE CLAIMS OF SEX-BASED DISCRIMINATION

For a sex discrimination claim to survive a motion to dismiss, "a plaintiff need only establish a *prima facie* case…by demonstrating that (1) [she] was within the protected class; (2) [she] was qualified for the position; (3) [she] was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019). At the 12(b)(6) stage, "[a] plaintiff need only allege facts that give plausible support to a minimal inference of discriminatory motivation." *Id.*

In the instant case, there is no dispute that Plaintiff's Amended Complaint satisfies the first three *prima facie* case elements. *See id.* Plaintiff also alleged facts that "give plausible support to a minimal inference of discriminatory motivation." *See id.* Specifically, Plaintiff plausibly alleged that she is a female, Defendants routinely exhibited a discriminatory animus against women, Plaintiff opposed Defendants' discriminatory comments about women on multiple occasions, Defendants denied her a role Basecamp Moderator role after she opposed the discriminatory comments about women, denied to interview/hire her for an Executive Assistant position, terminated her employment, and hired a significant number of male volunteers for permanent roles

while denying Plaintiff the same opportunities due to their discriminatory and retaliatory animus against her. (*See generally,* Am. Cpt.).

Plaintiff further alleged that Nagy messaged another employee stating, "There is absolutely misogyny in the Yang Gang" and that Ramey referred to Plaintiff as a "cunt." (*Id.,* at ¶ 48). Similarly, Plaintiff alleged that Ramey was the subject of multiple complaints due to his use of the words "bitch" and "cunt." (*Id.,* at ¶ 23). Lastly, Plaintiff plausibly alleged that Defendants intended to discriminate against Plaintiff on the basis of her gender. (*Id.,* at ¶ 68, 80, 94). Contrary to Defendants contention, Plaintiff clearly alleged that she herself was discriminated against a result of her sex when she was denied the Base Moderator role, called a "cunt" by a male employee, and was denied employment opportunities that Defendants afforded to male individuals. (*See generally,* Am. Cpt.).

Accordingly, Plaintiff alleged plausible claims of sex discrimination under the applicable statutes and therefore, this Court must deny Defendants' Motion to Dismiss the Amended Complaint.

## V.    PLAINTIFF PLED PLAUSIBLE CLAIMS OF RETALIATION

Under Title VII and NYSHRL, "[f]or a retaliation claim to survive a motion for summary judgment on the pleadings or a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took adverse employment—against him, (2) because he has opposed any unlawful employment practice." *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018) (citing *Vega v. Hempstead Union Free Sch. Dist.,* 801 F.3d 72, 90 (2d Cir. 2015)). In a retaliation case, an adverse employment action "includes conduct that is harmful to the point that it could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Duplan*, 888 F.3d at 626-27 (holding that the plaintiff's allegations that he suffered an adverse employment

action in retaliation for his previous EEOC complaint were sufficient to avoid dismissal) (citing *Shultz v. Congregation Shearith Israel,* 867 F.3d 298, 309 (2d Cir. 2017)).

To establish a retaliation claim under Title VII and NYSHRL, the plaintiff must plead that she suffered a materially adverse change in the terms and conditions of employment. *de Souza v. Planned Parenthood Fed'n of Am., Inc.,* No. 21 CIV. 5553 (LGS), 2022 WL 2047580, at *1 (S.D.N.Y. June 7, 2022). Under NYCHRL, which provides a more lenient standard, a plaintiff is not required to allege a material change in the terms and conditions of employment but only that the retaliatory act is "likely to deter a person from engaging in protected activity." *Id.* (citing N.Y.C. Admin. Code § 8-107(7)).

In the instant case, Plaintiff plausibly alleged that she engaged in protected activity by complaining to Defendants about and/or opposing gender discrimination on multiple occasions. *Duplan*, 888 F.3d at 625 (citing *Vega,* 801 F.3d at 90); (Am. Comp., at ¶¶ 22, 23, 28, 33, 34, 36, 39, 40, 42, 44, 49-51, 54, 55, 57, 60). Plaintiff further plausibly alleged that she suffered adverse employment action that constituted a material adverse change in the terms and conditions of her employment when Defendants denied her the opportunity to become a Basecamp Moderator, falsely accusing Plaintiff of "publicly raising an outcry," denied her the opportunity to interview her and failed to hire her for an Executive Assistant position despite her qualifications, failed to ameliorate the harassment and retaliation to which she was subjected, deactivating her slack account, terminating her employment, and publicly announcing her termination and doxing her on social media. *See id.*; (Am. Comp., at ¶¶ 27, 29, 37, 38, 41, 46, 47, 48, 52, 58, 59).

Clearly, Defendants' actions, namely their failure to hire Plaintiff despite her qualifications and termination of her employment, against Plaintiff following her engagements in protected

activity were materially adverse changes in the terms and conditions of her employment. *See de Souza,* 2022 WL 2047580, at *1.

Furthermore, a reasonable person would likely be dissuaded from making or supporting a charge of discrimination if she knew that it would result in the denial and/or termination of her employment. *See Duplan*, 888 F.3d at 626-27. Defendants illogically argue that Defendants actions were "likely not material" since said actions did not deter Plaintiff from subsequent complaints making complaints. However, Defendants argument is not dispositive as Plaintiff did not expect that Defendants would unlawfully terminate her employment for exercising her rights to complain about unlawful discrimination.

In light of the foregoing, Plaintiff plausibly alleged that she suffered material adverse employment actions under Title VII, NYSHRL, and NYCHRL and therefore, this Court must deny Defendants' Motion to Dismiss the Amended Complaint.

A. Plaintiff Pled a Plausible Retaliatory Failure to Hire Claim

To sustain a failure to hire claim, a plaintiff must allege that she applied for an available position for which she was qualified and was rejected under circumstances giving rise to an inference of unlawful discrimination. *Wang v. Phoenix Satellite Television US, Inc.*, 976 F. Supp. 2d 527, 537 (S.D.N.Y. 2013) (citing *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981)). "For a failure to hire claim to withstand a motion to dismiss, a plaintiff must allege specific positions to which she applied and was rejected." *Id.* (citing *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998)).

In the instant case, Plaintiff plausibly alleged that she applied for an Executive Assistant position advertised on Defendants' website and that she was qualified for the position; however, Defendants further retaliated against her by failing to interview and hire her for said role despite her qualifications. (Am. Comp., at ¶ 38). To further support her qualifications, Plaintiff plausibly

alleged that on September 25, 2019, Looney emailed her and Nbemeneh acknowledged the "amazing work" Plaintiff "has been doing for a while now." (*Id.,* at ¶ 43). Plaintiff's Amended Complaint also sets forth various allegations regarding her complaints leading up to the failure to hire incident, which establishes that Defendants failed to interview/hire her for the position under circumstances giving rise to an inference of discrimination. *See Wang*, 976 F. Supp. 2d at 537 (citing *Burdine,* 450 U.S. at 253); (*See generally,* Am. Cpt.).

Lastly, Plaintiff plausibly alleged that following the termination of her employment, Defendants hired a significant number of male volunteers for permanent roles while denying Plaintiff the same due to their discriminatory and retaliatory animus against her. (Am. Cpt., at ¶ 59). As such, Plaintiff sufficiently pled a claim for retaliatory failure to hire.

### B. Plaintiff Suffered Adverse Employment Action When Defendants Publicly Criticized and Doxed Her on Social Media

Defendants improperly argue that Plaintiff's claim that Defendants retaliated against her by subjecting her to public criticism and doxing does not rise to the level of a materially adverse action under Title VII and NYSHRL. However, Defendants' argument is misguided. This Court has found that negative employment references and foreclosing future employment opportunities qualify as adverse actions. *See Hughes v. Twenty-First Century Fox, Inc.,* 304 F. Supp. 3d 429, 448 (S.D.N.Y. 2018) (citing *Noni v. Cty of Chautauqua,* 511 F. Supp. 2d 255, 264 (W.D.N.Y. 2007)*; Veprinsky v. Fluor Daniel, Inc*., 87 F.3d 881, 890 (7th Cir. 1996)).

In the instant case, Defendants were aware that its employees publicly disclosed information concerning Plaintiff's employment discrimination and retaliation complaints, as well as the termination of her employment. (Am. Cpt., at ¶¶ 44- 47, 54). Nevertheless, Defendants failed to ameliorate the situation and allowed the public disclosure and criticism of Plaintiff to continue due to its retaliatory animus against her. (*Id.*). The social media posts amount to a negative

reference concerning Plaintiff's employment with Defendants, can be viewed by future employers, and are likely to foreclose future employment opportunities for Plaintiff.

As such, Defendant subjected Plaintiff to adverse employment actions in retaliation for her previous engagements in protected activity.

## VI.   PLAINTIFF'S DEFAMATION CLAIM

Plaintiff consents to the dismissal of defamation claim against Defendants.

## VII.   LEAVE TO REPLEAD

As Defendants concede, leave to replead is to be given liberally except where amendment would be futile. *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 104 (2d Cir. 2005). Defendants argue that Plaintiff should not be given further leave to replead because Plaintiff's claims fail as a matter of law. As outlined herein, Plaintiff's alleged plausible claims of gender discrimination and retaliation under the applicable statutes. However, should this Court grant Defendants' Motion to Dismiss in its entirety, Plaintiff respectfully requests that this Court afford her the opportunity to amend the pleadings as such amendment would not be futile.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court deny Defendants' Motion to Dismiss Plaintiff's Amended Complaint in its entirety.

Dated: New York, New York
      August 15, 2022

                         Respectfully submitted,

             By:   */s/Samantha E. Hudler*
                  Samantha E. Hudler
                  *Attorneys for Plaintiff*
                  757 Third Avenue, 20th Floor
                  New York, New York 10017
                  (917) 565-8763